PICKETT, Judge.
This action originated as a suit for legal separation by John Vernon James, Jr., against his wife, Mrs. Sandra King James, on the ground of abandonment.
The plaintiff prevailed in the District Court and obtained judgment against Mrs. James. We reverse that Judgment.
In his petition below, Mr. James, alleging that he and his wife were domiciled in *763 East Baton Rouge Parish, sought a legal separation on allegations that his wife abandoned him, on or about January 13, 1975, without lawful cause, taking with her the two children of the marriage Lea Margot James, age 12, and Mary Michelle James, age 12. He further alleged that the present whereabouts of his wife and children were unknown, and a curator ad hoc was appointed to represent her.
In the trial of the case the only parties who testified were the Plaintiff, his two witnesses, and the curator ad hoc. The wife was not personally served, and made no appearance, although the curator ad hoc was able to contact her by correspondence.
The Trial Judge, in granting the husband a legal separation, ruled from the bench, and assigned reasons orally.
The evidence established that there had been a history of marital difficulties between the parties during their twelve-year marriage.
With reference to the incidents that formed a basis for the instant case, the evidence establishes that on Friday night, January 10, 1975, Mr. and Mrs. James got into a heated argument, and Mr. James told his wife that he did not love her, that he was leaving, and that he was not coming back. He then gave her his paycheck, and left the home.
He called her on the telephone the next day, which was Saturday. The nature and purpose of this call is not clear, although subsequent events lead to the probable purpose of the call having been Mr. James wanting to get his personal belongings from the home.
The next time Mr. James was in communication with his wife was about 3:00 P.M. the following Monday, January 13, 1975, at which time he' went back to their apartment-home for the avowed purpose of obtaining and removing some of his personal belongings. The record is devoid of any evidence of any desire or intention on the part of Mr. James to return to the matrimonial domicile to live at this time. On the contrary, Mr. James indicated that, at this point, he had not made a decision as to whether he was going to stay away for good. In any event, when he arrived at the home his wife told him to return about 6:00 P.M. to get his personal belongings. Mr. James left, and when he returned at the appointed time he found that his wife had vacated the apartment, taking the children and all of their belongings, including their furnishings, with her. Mr. James did not remain. Mr. James then filed suit, alleging abandonment.
The two witnesses who testified for Mr. James testified that a separation had in fact occurred, and that no reconciliation of the two parties had taken place. Neither witness knew any of the circumstances of the separation, either of January 10, 1975, or the alleged abandonment of January 13, 1975. Accordingly, the testimony of Mr. James was completely uncorroborated as any facts concerning the alleged cause of the alleged abandonment of January 13, 1975.
Article 143 of the Louisiana Civil Code, upon which this suit was based, provides in pertinent part as follows:
“Separation grounded on abandonment by one of the parties can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed; . . . .”
This Court, in the case of Boudreaux v. Tanner, (1974) 295 So.2d 511, in an interpretation of the provisions of the above cited Article 143, said:
“Therefore, a party alleging abandonment must prove that
(1) there was a withdrawal from the common dwelling;
(2) that the withdrawal was without lawful cause; and
*764 (3) that the withdrawing party has constantly refused to return to live with the other spouse.”
Applying these requirements to the case at bar we find that while Mrs. James did in fact withdraw from the common dwelling on January 13, 1975, this withdrawal was not without lawful cause.
The evidence clearly establishes that on the night of January 10, 1975, Mr. James withdrew from the common dwelling, without any fault in the wife having been established, leaving his wife and two small children. At about 3:00 o’clock P.M., on Monday, January 13, 1975, having taken off from work for the purpose, he returned to the apartment-home for the sole avowed purpose of picking up his clothing. He did not offer to return to the home, nor did he express any desire or intention of returning, at that time, or at any time subsequent thereto.
The vacated apartment-home was never again used as a dwelling by either party. Mr. James established himself in the Lorraine Apartments on Boulevard de Province. The evidence does not reflect the whereabouts of Mrs. James.
The record is devoid of any evidence that Mrs. James “has constantly refused to live with the other spouse.”, namely, Mr. James.
The only evidence that addresses itself to this area of proof is the testimony of Mr. James to the effect that if Mrs. James had offered to come back to live with him in his new quarters he “probably” would have taken her back. This certainly cannot be construed as proof that Mrs. James has “constantly refused” to return to Mr. James.
LSA-C.C. Art. 145 provides for proof of abandonment in such cases as follows:
“In all suits hereafter, whether or not there has been an answer filed, the abandonment with which the husband or wife is charged shall be proved as any other fact in a civil suit and such case shall be set and tried as any other suit.”
Accordingly, since Mr. James has failed to bear his burden of proof, by a preponderance of the evidence, his suit must be dismissed.
Plaintiff-Appellee is cast for all costs.
Reversed and rendered.