338 So.2d 971 (1976)
Frank GILBERTI
v.
Carolyn Theriot GILBERTI.
No. 7626.
Court of Appeal of Louisiana, Fourth Circuit.
October 13, 1976.
*972 Tucker, Schonekas & Garrison, Gibson Tucker, Jr., New Orleans, for plaintiff-appellant.
*973 Cronvich & Wambsgans, Metairie, Kenneth V. Ward, Jr., New Orleans, for defendant-appellee.
Before LEMMON, GULOTTA and BEER, JJ.
BEER, Judge.
Plaintiff-appellant, Frank Gilberti, filed suit for separation from his wife, Carolyn, alleging constructive abandonment. She reconvened alleging mental and physical cruelty. From a judgment in favor of the wife, the husband appeals.
Frank Gilberti testified that their difficulties reached a point where "we couldn't even stay in the same house. We were arguing so much . . . so the morning of April 21st (1975) . . . I told my wife that I wasn't going to sleep there anymore and I was packing my clothes. . ." He testified his wife replied ". . . I'm putting you out. I don't want you back anymore."
Carolyn Gilberti indicated that the final upheaval leading to her husband's leaving their matrimonial domicile began when she inquired of him why he had not filed certain tax returns. These inquiries resulted in his being angered to the extent that he screamed and yelled at her. This behavior allegedly continued until his departure. She also describes an earlier incident in the course of which she claims her husband hit her in the face and spit on her. From that time onward, she contends that she has been afraid that a similar incident would occur. Nonetheless, she lived with him for approximately one year thereafter and admits no recurrence.
The only other act involving physical violence took place on the date of the husband's departure. Before he left, he allegedly shoved in a door which struck Mrs. Gilberti's fingernail and broke it.
In seeking to further support her claim of cruelty on the part of her husband, Carolyn Gilberti alleged and stood ready to testify that Frank Gilberti refused to have sexual relations with her. The trial judge, however, maintained an objection to the line of questioning regarding the alleged refusal or infrequencyof sexual relations, notwithstanding counsel's contention that such evidence was material to this litigation.
The testimony of both litigants indicates that their almost continuous arguments usually mushroomed from ordinary conversation and that once an argument started, it usually ended with yelling, screaming and cursing. Carolyn Gilberti observed: "Most of the time, we started off on a simple conversation and somehow we would up arguing. Now whose fault is that."
The party seeking a legal separation on the grounds of abandonment must prove the elements thereof. Boudreaux v. Tanner, 295 So.2d 511 (La.App. 1st Cir., 1974). Once proven, the burden then shifts to the opposing party to prove the alleged abandonment was done with lawful cause or adequate provocation. Farkas v. Farkas, 264 So.2d 721 (La.App. 1st Cir., 1972). However, mutual agreement that one spouse should leave the matrimonial domicile is not sufficient of itself to support an action for separation predicated on abandonment. Schoen v. Schoen, 259 So.2d 626 (La.App. 4th Cir., 1972). Nor can abandonment be used as a basis for obtaining a separation from bed and board if it is resulting from an altercation in which the husband and wife are equally at fault. Wood v. Wood, 227 So.2d 656 (La.App. 3rd Cir., 1969). However, "constructive abandonment," as specially pleaded in this case, has been jurisprudentially recognized in Smith v. Smith, 300 So.2d 205 (La.App. 3rd Cir., 1974).
Assuming, arguendo, that there was "constructive abandonment," then Carolyn Gilberti's reconventional claim of cruel treatment must be carefully reviewed in order to determine the correctness of the judgment appealed from.
Cruelty in any form which renders living together insupportable is a proper legal ground for a judicial separation in favor of the one mistreated. LSA-C.C. Article 138; Mudd v. Mudd, 206 La. 1055, 20 So.2d 311 (La.Sup.Ct., 1944); Chapin v.
*974 Chapin, 234 So.2d 781 (La.App. 1st Cir., 1970). Cruel treatment may exist even though there is no physical violence. Olberding v. Gohres, 107 La. 715, 31 So. 1028 (1902). Mental harassment alone is sufficient to constitute cruelty. Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581 (1947); Berry v. Berry, 310 So.2d 626 (La. Sup.Ct., 1975); Schneider v. Schneider, 129 So.2d 42 (La.App. 4th Cir., 1961). Even a single instance of cruelty may be sufficient to justify separation from bed and board, Dejoie v. Dejoie, 224 La. 611, 70 So.2d 398 (1954), but this rule is inapplicable if there exists mutual fault or if the cruel act is the result of provocation on the part of the other spouse, Eals v. Swan, 221 La. 329, 59 So.2d 409 (1952); O'Neill v. O'Neill, 196 So.2d 669 (La.App. 1st Cir., 1967). The rule is also inapplicable if the act of cruelty is the only one during a long period of cohabitation. Barnes v. Barnes, 207 So.2d 895 (La.App. 1st Cir., 1968). Furthermore, cohabitation following physical abuse is usually construed as reconciliation although previous acts of violence may be material in corroboration with subsequent acts of violence, to demonstrate a justification for a wife's alleged apprehension of personal safety which caused her to leave the house. LSA-C.C. Article 153, Maranto v. Maranto, 297 So.2d 704 (La.App. 1st Cir., 1974). Notwithstanding such evidential permissiveness, the rule is qualified so that mere uncorroborated testimony of one spouse as to the other spouse's alleged acts of violence, contradicted by the accused spouse, will not constitute a preponderance of the evidence required to justify a judgment of separation, Johnson v. Johnson, 296 So.2d 470 (La.App. 2nd Cir., 1974), writs denied 300 So.2d 183 (La.).
Although Mrs. Gilberti testified that her husband struck her in the course of an argument that took place some six months after their marriage, Mr. Gilberti emphatically denies same. There was no other evidence corroborating Mrs. Gilberti's testimony. Thus, the uncorroborated testimony of Mrs. Gilberti, insofar as it supports that alleged physical excess, is insufficient to constitute a preponderance of the evidence required to justify a judgment of separation on those grounds. But even though the alleged earlier altercation can not, standing alone, support a cruelty finding, such previous act of violence may, in corroboration with subsequent acts, demonstrate a justification for the wife's apprehension of physical bodily harm. If the husband's alleged earlier act of violence, viewed with the events of April 21st, reasonably led the trial judge to conclude that Mrs. Gilberti was living in a state of fear sufficiently upsetting as to render their living together insupportable, then the judgment must be affirmed.
The trial court's factual conclusions, which are based on the testimony of witnesses whose credibility he must determine, are to be accorded very substantial weight on review. Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581 (1947) and McVay v. McVay, 276 So.2d 926 (La.App. 3rd Cir., 1973). In Gurtner v. Gurtner, 258 So.2d 148 (La.App. 4th Cir., 1972), we stated that:
"On appellate review of a judgment granting a separation from bed and board based on conflicting factual evidence, this court should not substitute its judgment for that of the trial judge who listened to and observed the witnesses, but rather should affirm the finding of the trial judge if there is any evidence in the record to support his conclusion. Where both sides present substantial evidence and the trial judge chooses to accept the evidence of one side and reject that of the other, we should not reverse this determination."
A study of the record does disclose factual disputes which were, apparently, resolved in favor of Carolyn Gilberti by the trial judge. Following the mandate of Gurtner v. Gurtner, supra, we must affirm even if it appears to us that the facts more likely lead to a conclusion that fault is equal.
Though it does not affect the outcome of this appeal, we must note the following:
The trial court maintained an objection to the admissibility of evidence regarding *975 the lack or infrequency of the litigants' sexual relations. This was error. Unjustified, persistent denial of sexual intercourse constitutes "cruel treatment" and "outrage" within the meaning of LSA-C.C. Article 138. This court has specifically stated:
". . . a spouse who unjustifiably declines sexual union breaches the marriage agreement in its most delicate and intimate fundamental aspect. Probably isolated instances of unjustified refusal must be borne as mere imperfections of humanity. But a studied rejection in this exquisitely sensitive relationship of the spouses must be deemed cruel treatment and outrage and, when the refusal is persistent, it must be deemed `ill-treatment * * * of such a nature as to render their living together insupportable,' C.C. art. 138(3), when the refused spouse is of such a disposition that in fact the living together becomes no longer supportable." Phillpott v. Phillpott, 285 So.2d 570, 572 (La.App. 4th Cir., 1973), writs refused 288 So.2d 643 (La.).
Were we not affirming, remand would be necessary to permit the taking of testimony and the introduction of evidence supportive of Mrs. Gilberti's contention in this regard.
However, the judgment of the 24th Judicial District Court is affirmed on the grounds first above noted. Each party is to bear their own costs of the appeal.
AFFIRMED
LEMMON, J., dissents and assigns reasons.
LEMMON, Judge (dissenting).
I acknowledge the rule of appellate review that when the evidence is in conflict, that evidence most favorable to the prevailing party should be accepted. In my view, however, this case is not one of resolution of conflicting testimony, but one of sufficiency of proof.
Mrs. Gilberti's own testimony establishes only that the spouses were incompatible and provoked each other throughout a short, stormy marriage.
She began her testimony, for example, by describing how she refused to allow her husband the use of her automobile battery to start his car in retaliation for his refusal to explain why their income tax return had not been filed. Her other testimonythat their conversations generally turned into arguments and that she was struck in the face early in their marriage after a shouting and spitting exchangeindicate incompatibility and mutual intolerance rather than "ill-treatment . . . of such a nature as to render their living together insupportable".
I would reverse and remand for the purpose of allowing the excluded evidence of cruelty through sexual denial.